# Tolleson *v.* Blackstock.

*Bill in Equity for Specific Performance of Parol Gift.*

1. *Specific performance of parol gift of land.*—A court of equity will not enforce, against the executors and heirs of the deceased donor, the specific execution of a parol gift of land, where it appears that the donor placed the donee in possession, under the declared intention of giving the land to him, and afterwards requested or verbally directed his executors to execute a deed to him, and that the donee erected some improvements of inconsiderable value.

APPEAL from the Chancery Court of Cleburne.
Heard before the Hon. S. K. McSPADDEN.

AIKEN & BURTON, for appellants, cited *Forward v. Armistead,* 12 Ala. 124; *Evans v. Battle,* 19 Ala. 398; *Pinckard v. Pinckard,* 23 Ala. 649; 3 Pomeroy's Equity, § 1405; *Irwin v. Bailey,* 72 Ala. 79; *Clark v. Clark,* 122 Ill. 388,

[Tolleson v. Blackstock.]

MERRILL & BRIDGES, ELLIS, BABER & JOHNSON, *contra,*
cited *Spies v. Price,* 91 Ala. 166; *Price v. Bell,* 91 Ala. 180;
*Brewer v. Brewer & Logan,* 19 Ala. 481; 1 Pom. Equity,
§ 430; 3 *Ib.* § 1409; 48 Amer. Rep. 640; *Brock v. Brock,*
90 Ala. 87; *Grigsby v. Osborn,* 82 Va. 371; *Hardesty v. Rich-
ardson,* 22 Amer. Rep. 57; *Freeman v .Freeman,* 3 *Ib.* 657; *Story
v. Black,* 51 *Ib.* 37; 8 Amer. & Eng. Encyc. Law, 1338–49.

COLEMAN, J.—S. F. Blackstock, a minor, by his next
friend filed the present bill, which may be regarded as a
bill for specific performance, seeking to have the legal title
to certain described lands divested out of the heirs of Wil-
liam Tolleson, deceased, and invested in the complainant.
Upon the filing of the bill an injunction issued, restraining
the executors from prosecuting a suit in ejectment against
Blackstock to recover possession of the land in contro-
versy.

It is unnecessary to consider at much length one aspect
of the case, which seems to have been relied upon, to some
extent, in the original bill; and that is that the executors,
who were the sole parties to the original bill, actively and
fraudulently interfered to prevent William Tolleson in his
last sickness from executing a deed to the said Blackstock,
or that William Tolleson, relying upon the promise of the
executors to make a deed after his death, conveying the
lands to the said Blackstock, was thereby induced to leave
the deed unexecuted in his life-time.   The bill was amended
so as to make the widow and all the heirs of William Tolle-
son parties defendant.   It is not pretended that William
Tolleson himself undertook in writing, or by written instru-
ment authorized and empowered the defendants, or either
of them, to make such deed or conveyance, or that the other
respondents, heirs of the decedent who were not executors,
and some of whom were not present, interfered in any way,
by promise or otherwise, to prevent the execution of the
deed by deceased to Blackstock, if such was the intention
and desire of decedent.

Section 1845 of the Code reads as follows : "No trust
concerning lands, except such as results by implication or con-
struction of law, can be created, unless by instrument in
writing, signed by the party creating or declaring the same,
or his agent or attorney lawfully authorized thereto in
writing." This statute has been frequently considered in
this court, and its proper construction may be regarded as
practically settled.—*Brock v. Brock,* 90 Ala. 87; *Patton v.
Beecher,* 62 Ala. 579; *White v. Farley* 81 Ala. 563; *Manning*

[Tolleson v. Blackstock.]

*Pippen,* at present term; *Kelly v. Karsner,* 72 Ala. 106. No relief could be granted upon the ground that the executors refused to execute a conveyance of the land to complainant, without a plain violation of this statute.

The other grounds for relief made by the bill and testimony may be stated as follows : When the complainant, Blackstock, was about three years of age, he was left an orphan, and the deceased, William Tolleson, took him as a member of his family, raised, educated, and in all respects treated him as one of the children. As the children of William Tolleson married, or attained their majority, he gave each of them by deed of conveyance a tract of land. In May, 1888, the complainant Blackstock, being then about 17 years of age, married, and in the fall of that year William Tolleson put him in possession of the land in controversy, but made him no deed of conveyance. In September the following year, the deceased was stricken with paralysis, and after lingering ten or fifteen days died. He had made his will and appointed his executors many years before, but after the time when the complainant was received into his family as one of its members. The bill then proceeds as follows : "In consideration of love and affection gave and placed him in possession of the following lands," describing them ; "that he went into possession of said lands under a parol gift from the said William Tolleson, and has continued in possession thereof until the present time, using them in all respects as his own, and that he has made valuable and permanent improvements thereon, . . upon his faith in said gift," &c.

The record is very voluminous, many witnesses having been examined by both sides. We have read all the evidence with care, and our conclusion is that the weight of the evidence does not establish that an absolute gift of the land was made, or intended to be made, at the time the deceased put the complainant in possession of it. As often expressed by him, his purpose was to see how the complainant would succeed, and if satisfactorily "he aimed" to give it to him. The possession was merely permissive, and not under an absolute gilt. We incline to the view from all the evidence that, during his last sickness, William Tolleson fully purposed to perfect a gift of the land in a legal way. Whether the failure was the result of not having a deed prepared, or the neglect of not calling his attention to the fact that one had been prepared for his signature, or that he relied upon his executors to carry out his verbal request to that effect, it is unnecessary to consider. The fact is

[Tolleson v. Blackstock.]

undisputed, that he neither signed any instrument himself conveying the land, nor authorized in writing any one to execute such a conveyance. The question arises, can complainant enforce against the heirs of William Tolleson a specific performance of this verbal voluntary promise or request made by William Tolleson, and require the heirs to convey to complainant the legal title, which descended to them on the death of their father. If William Tolleson had not died, but had recovered from his last illness, could the complainant maintain the present bill against him? If he could not, it will not lie against his heirs. The principle involved has been directly adjudicated in this State. A verbal promise by a father to his son, that if he will remove from North Carolina, and settle in Alabama, he will give him a particular plantation, being a mere gratuity, can not be enforced against the heirs or devisees of the father after his death, although the father may have put the son in possession of the land before his death.—*Forward v. Armistead*, 12 Ala. 124. This principle was re-affirmed in the case of *Evans v. Battle*, 19 Ala. 402, and again in *Pinckard v. Pinckard*, 23 Ala. 650.

The cases cited by appellee are of that class which grew out of a contract, based upon a valuable consideration, and the distinction is expressly made in such cases, and those which are founded upon mere gratuitous promises.—23 Ala., *supra*, and *Stone v. Britton*, 22 Ala. 543. The other cases cited involve a different principle, and one which does not arise here.

The improvements made, according to complainant's own testimony, amounted to only about eighteen dollars, a mere trifle as compared with the value of the land, and amounts to a small per cent. of its annual rental value, as shown by the evidence. We have declared that the evidence does not support the allegation that complainant went into possession under a parol gift, but rather a permission to use and occupy during the pleasure of the owner, and that there was no absolute intention or purpose to make a gift until during the last illness of the owner. Under the influence of the foregoing authorities, complainant would not be entitled to relief under either aspect of the evidence, and an amendment of the bill in this respect would avail complainant nothing.

The enforcement of the law as we interpret it may work a hardship in some cases, but to grant relief, upon the evidence as disclosed in this record, would be to disregard the statute itself, and destroy the safeguards placed upon land titles and trusts concerning lands, by its provisions.

33

[Hodges v. Winston.]

The decree of the chancellor must be reversed. The cause will be remanded, that the court below may render a decree in accordance with the rules here declared.

The orders made by the chancellor in this case after the appeal was taken are not properly before us on this appeal. On the remandment of the case, the court will have authority to hear and determine and make all proper and necessary orders in regard to the deed heretofore executed by the register.

Reversed and remanded.